UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| INAS KHAYAL,<br><br>                Plaintiff,<br><br>v.<br><br>TRUSTEES OF DARTMOUTH COLLEGE,<br><br>                Defendant. | CIVIL ACTION NO. 1:24-cv-_____ |

**COMPLAINT AND JURY DEMAND**

I. Introduction

1.      Prof. Khayal is an Arab-American Muslim female tenure-track Assistant Professor of Health Policy and Clinical Practice at Dartmouth College at the Geisel School of Medicine (Geisel). She works at Dartmouth in The Dartmouth Institute for Health Policy and Clinical Practice (TDI) at Geisel. Throughout Prof. Khayal's employment, Dartmouth continually failed to treat her equally compared to non-Muslim and Arab peer colleagues in compensation and resources. Specifically, Dartmouth provided her no financial support for her research and substantially less salary support[1] compared to her peers. The lack of funding – which Dartmouth only increased after Prof. Khayal reported the glaring disparity in resources compared to her non-Muslim and Arab colleagues – meant Prof. Khayal had no funds from Dartmouth to invest in research until 2021, unlike her peer colleagues, which significantly handicapped her career opportunities. She seeks compensation for the lost wages, lost research

---

[1] "Salary support" in this context refers to the actual monetary portion of a professor's salary guaranteed by Defendant, whereas any remaining portion of a professor's yearly salary must be received through external sources (i.e. grants).

opportunity, emotional distress, reputational harm, and other damages to be proven at trial in excess of $1 million.

## II. Parties

2.  Inas Khayal is a resident of Lyme, New Hampshire and is a Muslim woman, which she expresses in both private settings and publicly. Her family originates from the Palestinian territories and she is recognizable as a female Arab from appearance, name, and prior employment in an Arab country.

3.  Trustees of Dartmouth College ("Dartmouth") is a non-profit corporation organized and existing under the laws of New Hampshire that maintains its principal place of business at 63 South Main Street, Suite 301, Hanover, New Hampshire 03755.

## III. Facts

### Pre-Tenure Decision Discrimination

4.  Prof. Khayal began her career at the Boston University Biomedical Engineering department and now holds a Ph.D. in Bioengineering from the University of California, Berkeley and the University of California, San Francisco Joint Graduate Group.

5.  Prof. Khayal's training and experience in biomedical engineering, management of technology, and engineering systems allowed her to develop the concept of Sustainable Health and establish the Sustainable Health Lab Research Program. Her work now focuses on the intersection of engineering, medicine, computation, and innovation and seeks to design and re-design healthcare delivery systems to match the complex needs and experiences of patients to improve health outcomes.

6.  Prof. Khayal received her original appointment as Assistant Professor to TDI in Dartmouth in October 2015 on *the research track*, not on the tenure track.

7.     In October 2016, Dartmouth moved Prof. Khayal, *without informing her*, from the research track to the tenure track.

8.     Prof. Khayal did not learn about being moved to the tenure track until August 2017.[2]

9.     According to Dartmouth policy, upon appointment to the tenure track, an assistant professor receives written notification with information on "expectations in terms of research, scholarship, teaching, and service . . . the level of qualified support for their compensation (e.g., 50%), [and] obligations of [Geisel] in terms of salary and research support."

10.    Prof. Khayal never received such written notification.

11.    Dartmouth provides initial funding to newly appointed tenure-track professors ("start-up funding") as a routine practice so that such professors have sufficient resources to apply for initial research grants. New professors hire graduate students and/or post-docs to work on their research to support these grant applications. The money received through such grants is then used to fund their research in subsequent years.

12.    The typical start-up funding package for professors in Prof. Khayal's department at Dartmouth – biomedical data science -- is between $400,000 and $500,000.[3]

13.    Dartmouth did not provide Prof. Khayal any start-up funding upon her appointment to the tenure track. As a result, she resorted to use her salary and personal time to fund her grant writing.

---

[2] Dartmouth did not make this formal in writing until May 2018.

[3] In light of Prof. Khayal's multi-disciplinary specializations, *supra* at ¶5, she does not neatly fit under the biomedical data scientist category but is more accurately categorized as a biomedical engineer. She should have received a similar startup package and salary as engineering professors at Dartmouth's Thayer School of Engineering, where start-up funding packages range from $800,000 to $900,000. However, she joined Dartmouth at the same time that her husband, Professor Amro Farid, was recruited to Thayer and they were told by then Dean Joseph Helble that Thayer had a policy against hiring two spouses at once. This proved to be untrue.

14.     Dartmouth also did not provide Prof. Khayal with any dedicated lab space for her research, unlike other peer colleagues who were provided with dedicated lab space at the time.[4]

15.     Dartmouth also did not update her appointment date when Prof. Khayal was moved to the tenure track, so while her tenure track appointment was officially October 2016 (although she did not receive verbal notice of the appointment until August 2017),[5] Dartmouth assessed her progress toward tenure based on an October 2015 appointment date.

16.     Dartmouth also typically funds up to 100%[6] of the salary of tenure track professors during the initial three-year appointment. Dartmouth only funded 17% and then 5% of Prof. Khayal's salary after moving her to the tenure track.

*Plaintiff's Objections to Inequitable Treatment and Dartmouth Response*

17.     When Prof. Khayal learned that she had been moved to the tenure track in 2017, she inquired with Geisel Dean Leslie Henderson about her lack of start-up funds. Dean Henderson responded that if it was a problem, Prof. Khayal could be moved back to the research track.

18.     As a tenure track professor, Prof. Khayal should have annual meetings with her Department Chair or a designated academic advisor to come to an agreement on expectations for teaching, research, and service. She never had such meetings.

19.     In May 2019, Dean Henderson met with Prof. Khayal's mentor, Prof. Amber Barnato, who provided positive feedback on Prof. Khayal's contribution to Geisel and TDI.

---

[4] TDI has since moved to a shared lab space model. Prof. Khayal never received dedicated lab space when it was an option.

[5] Prof. Khayal only received written notice of the transfer to tenure track the following year.

[6] The term for funding salary is "subvention."

4

20.     In June 2019, Prof. Khayal met with Dean Henderson and Prof. Barnato about her expectations and then received a letter from Dean Henderson purporting to summarize the meeting. The letter informs Prof. Khayal that she is going to be expected to fund 95% of her salary, as opposed to 83% of her salary as she had been funding. It also states that she would continue for another year as an Assistant Professor of TDI in the tenure track. The letter further provides that if she succeeded in securing "external funding" in "support of [her] compensation and towards building a robust and self-directed research program," and if she continues to meet other expectations (as the letter indicates she was), her contract would be renewed for another three-year term in 2020.

21.     Later in June 2019, Prof. Khayal met with Provost Joseph Helble to express her concerns about inequitable treatment.

22.     During the meeting, Helble said he would be contacting school officials to ask about Prof. Khayal's case and he would look into his Provost records with respect to the faculty on the tenure-track. Prof. Khayal never heard anything back from Helble.

23.     In March 2020, Dartmouth extended the contracts of all professors, including Prof. Khayal, for one year due to the COVID-19 pandemic.

*Dartmouth Removes Plaintiff From Tenure Track*

24.     On June 25, 2021, Dartmouth informed Prof. Khayal, through Dean Henderson, that she was being removed from the tenure track and appointed to a non-tenure track three-year term, without any possibility of a move back to tenure track, based on an alleged failure to meet funding and publication expectations.

25. Dartmouth took these actions, through Dean Henderson, despite having never done a formal summative review of Prof. Khayal's work, such as soliciting a dossier from Prof. Khayal as typically occurs when reviewing a professor's scholarship.

26. Dartmouth took this action because of Prof. Khayal's national origin and religion.

*Prof. Khayal Retains Counsel, Reports Discrimination, and Dartmouth Responds*

27. In response to the June 25, 2021 letter, Prof. Khayal sent a letter to Dean Henderson, through counsel, criticizing the recommendation as unlawfully biased and inconsistent with TDI and Dartmouth policy. Prof. Khayal detailed the historical inequity evidenced in the funding and resources provided by Dartmouth and demanded that Dartmouth re-start its three-year review of her progress on the tenure track.

28. Dartmouth responded on August 12, 2021, denying that Prof. Khayal's performance warranted contract renewal, but agreeing to reset the start of her initial tenure track appointment to June 1, 2018. Dartmouth did not promise Prof. Khayal any start-up funding or other resources.

29. On September 13, Dartmouth sent another letter to Prof. Khayal informing her that she had been reappointed as Assistant Professor to the Geisel School of Medicine for a three-year term effective July 1, 2021.

30. In or around September 2021, Prof. Khayal informed administrators that she was applying for an American Cancer Society (ACS) grant that required an institutional support letter. Such a letter typically provides information to the grant sponsor concerning the amount of research funding that the grant applicant receives from his or her research institution and the amount of lab space that the applicant is given.

31. The ACS grant application was due October 15 and Prof. Khayal informed Dartmouth administrators that she needed to have the institutional support letter ("ACS letter") included with her application. She explained that if the ACS letter informed the grant sponsor that she did not have any subvention support (i.e. salary support), dedicated lab space, and/or start-up funding, then she would not be a competitive applicant and both she and the Dartmouth Geisel School of Medicine would lose out on the grant.

32. On October 8, 2021, Geisel Dean Duane Compton presented a written offer to Prof. Khayal of her subvention support, start-up funding, and lab space for her new three-year appointment. He informed Prof. Khayal, however, that the offer was contingent on her releasing any claims that she had or could have raised against Dartmouth.[7]

33. Prof. Khayal's peers are not required to release claims against Dartmouth as a condition of receiving subvention support, start-up funding, or lab space.

34. Prof. Khayal ended up submitting the grant application in October with an institutional support letter that did not provide any information about start-up funding.

35. Dartmouth and its administrators knew that Prof. Khayal needed information about her institutional support in the letter for the ACS grant.

*Prof. Khayal Reports Intention to File Lawsuit, Dartmouth Responds*

36. After the submission of the ACS grant application, Dartmouth did not initially contact Prof. Khayal again to re-engage about her funding and resources.

37. On or about December 13, 2021, Prof. Khayal, through counsel, informed Dartmouth that she intended to file a claim of discrimination against Dartmouth with the New Hampshire Human Rights Commission.

---

[7] With this offer, Dartmouth agreed to provide Prof. Khayal 50% subvention support and also guaranteed the remaining 50% of her salary if she were unable to recover this amount through grants and other external sources.

38. Two days later, on December 15, 2021, Dean Compton sent Prof. Khayal a new proposal for her funding and resources.

39. The new proposal, unlike the proposal sent on October 8, 2021, did not include a release of claims that Prof. Khayal was required to sign.

40. The new proposal only offered dedicated lab space if Prof. Khayal were awarded the ACS grant.

41. The new proposal provided funding support but no extension of the tenure clock, which means that Prof. Khayal only had one year and five months to access this funding, instead of the typical five years.

42. Had Prof. Khayal received this funding when she began her tenure-track, as similarly-situated professors at Geisel do who are not Arab and Muslim, she would have been able to invest more substantially in research at the beginning of her Dartmouth career and produced more results earlier, leading to a more robust and impressive record.

43. The delay of funding substantially impaired Prof. Khayal's career trajectory, causing lost income, lost promotional opportunities, reputational harm, and other damages.

44. After Prof. Khayal submitted her original ACS grant application, without any reference to startup funding, *supra* at ¶34, she received a response from the ACS with a request for more information. She resubmitted her application and Dartmouth added information about her funding (which they had finally provided to Prof. Khayal) and that Prof. Khayal would have dedicated lab space for the grant. She was awarded the ACS grant in September 2022.

45. Despite being awarded the ACS grant, and despite the promise of dedicated lab space in the grant application, Prof. Khayal has still not received dedicated lab space.

46. The above discriminatory actions, including, lack of salary funding, lack of startup funding, lack of resources, lack of administrative support, threatening removing Plaintiff from tenure-track, and other actions, violate New Hampshire Law Against Discrimination, RSA354-A:7, and Title VII of the Civil Rights Act of 1964, causing significant damages in the form of lost wages, emotional distress, reputational harm, and other losses.

## Administrative Exhaustion

47. On or about December 20, 2021, Prof. Khayal filed a Charge of Discrimination with the New Hampshire Commission for Human Rights (NHCHR).

48. On or about January 17, 2024, the NHCHR closed its investigation in response to receiving notice of Professor Khayal's intent to exercise her statutory right to file a civil action.

49. On or about January 20, 2024, the EEOC issued Professor Khayal a Notice of Right to Sue. Plaintiff's counsel received the Notice of Right to Sue on January 22, 2024. Professor Khayal files the instant action within 90 days of receiving said Notice of Right to Sue, as required.

## **COUNT I**

### **(Discrimination Based on Religion and/or National Origin in Violation of Title VII)**

50. Plaintiff incorporates and restates the allegations contained in Paragraphs 1-49.

51. Plaintiff is Muslim, and her family originates from the Palestinian territories.

52. Plaintiff performed her job at Dartmouth at all times at an acceptable level.

53. Defendant provided less favorable terms and conditions of employment to Plaintiff as described above based on her religion and/or national origin.

54. As a direct and proximate result of the Defendant's discrimination in violation of Title VII, the Plaintiff has suffered and continues to suffer damages, including but not limited to

lost wages, lost employment benefits, lost earning capacity, emotional distress, humiliation, inconvenience and loss of enjoyment of life.  The Plaintiff is further entitled to punitive damages based on the Defendant's actions done with malice and/or with reckless disregard for his federally protected rights, in addition to attorney's fees and costs.

## COUNT II
### (Discrimination Because of Religion and/or National Origin in Violation of RSA 354-A:7)

55. Plaintiff incorporates and restates the allegations contained in Paragraphs 1-54.

56. Plaintiff is Muslim, and her family originates from the Palestinian territories.

57. Plaintiff performed her job at Dartmouth at all times at an acceptable level.

58. Defendant provided less favorable terms and conditions of employment to Plaintiff as described above based on her religion and/or national origin.

59. As a direct and proximate result of the Defendant's discrimination in violation of Title VII, the Plaintiff has suffered and continues to suffer damages, including but not limited to lost wages, lost employment benefits, lost earning capacity, emotional distress, humiliation, inconvenience and loss of enjoyment of life.  The Plaintiff is further entitled to punitive damages based on the Defendant's actions done with malice and/or with reckless disregard for his federally protected rights, in addition to attorney's fees and costs.

**WHEREFORE**, Plaintiff prays this Honorable Court:

1. Schedule this matter for trial by jury, and after trial;
2. Find the Defendant liable for discrimination in violation of Title VII and RSA 354-A;

3. Find the Defendant liable for retaliation in violation of Title VII and RSA 354-A;

4. Award the Plaintiff damages for lost wages, lost employment benefits, and lost earning capacity;

5. Award the Plaintiff damages for emotional distress, humiliation, inconvenience and loss of enjoyment of life;

6. Award the Plaintiff punitive damages;

7. Award the Plaintiff enhanced compensatory damages;

8. Award the Plaintiff reasonable attorney's fees;

9. Award the Plaintiff interest and costs; and

10. Grant such other and further relief as is just and equitable.

## JURY DEMAND

Prof. Khayal hereby demands a trial by jury on all claims raised in her Complaint that are so triable.

Respectfully submitted,

PLAINTIFF INAS KHAYAL

By her attorneys,

Date: March 7, 2024         By:     */s/ Mark M. Whitney*
Mark M. Whitney, NH Bar No. 11892
WHITNEY LAW GROUP, LLC
11 State Street
Marblehead, MA 01945
(781) 631-4400
E: mwhitney@whitneylawgroup.com
*Local counsel for Plaintiff*

and

Joseph L. Sulman, MA BBO #663635
(*pro hac vice motion forthcoming*)
LAW OFFICE OF JOSEPH L. SULMAN
255 Bear Hill Road, Suite 204
Waltham, MA 02451
(617) 521-8600
jsulman@sulmanlaw.com
*Lead Counsel for Plaintiff*

12