UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Inas Khayal

      v.

Trustees of Dartmouth College

Civil No. 24-cv-00070-JL
Opinion No. 2024 DNH 068

## **ORDER**

Resolution of this motion to dismiss hinges on whether the plaintiff, Inas Khayal, has alleged facts that "raise [] more than [the] sheer possibility" that Defendant Trustees of Dartmouth College acted with discriminatory or retaliatory motive when it denied her certain specified compensation and research funding, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, and N.H. Rev. Stat. § 354-A:7. *See Frith v. Whole Foods Mkt., Inc.*, 38 F.4th 263, 270 (1st Cir. 2022) (internal citations omitted). Khayal is Muslim and Arab-American. She alleges that because of her religion or national origin, Dartmouth treated her unequally in compensation and resources relative to her non-Arab, non-Muslim colleagues. The court has jurisdiction over this case under 28 U.S.C. § 1331 (federal question) and § 1367 (supplemental jurisdiction). After the customary briefing and oral argument, the court rules that because Khayal has alleged sufficiently specific facts to allow the court to draw the reasonable inference that Dartmouth is liable for the alleged discriminatory--but not retaliatory--conduct, the court denies in part and grants in part Dartmouth's motion to dismiss.

## I.   Background

The court recites the relevant factual background from Khayal's First Amended Complaint.[1]   Khayal, whose family is originally from the Gaza Strip, is a tenure-track Assistant Professor at Dartmouth's Geisel School of Medicine.   Khayal is "recognizable as a female Arab from appearance, name, and prior employment in an Arab country."[2] She is a "biomedical engineer" whose work involves the "intersection of engineering, medicine and computation."[3]   Khayal alleges that Dartmouth treated her worse than non-Arab, non-Muslim tenure-track professors in several ways, including denying her compensation and research funding, that ultimately affected the school's assessment of her progress toward tenure and her ability to secure a tenured position.

According to Khayal's complaint, Dartmouth originally hired her in October 2015 on the "research track," but in October 2016, the school moved her to the tenure track without informing her.[4]   She did not learn she had been moved to the tenure track until August 2017.[5]   She also alleges that she never received a written notification from Dartmouth with information about the school's expectations for scholarship, teaching, and compensation for tenure-track professors, which inform the school's assessment of an assistant professor's progress toward tenure.[6]   Despite the fact that she had been moved to the tenure track in October 2016, Dartmouth initially set October 2015 as the beginning

---

[1] Am. Compl., doc. no. 10.
[2] *Id.* at ¶ 3.
[3] *Id.* at ¶ 5 and n. 3.
[4] *Id.* at ¶¶ 6-7.
[5] *Id.* at ¶ 8.
[6] *Id.* at ¶¶ 9-10.

of her tenure review period.[7]  Per the complaint, Dartmouth assessed her progress toward

tenure against the October 2015 date.[8]

Khayal alleges that Dartmouth routinely provides new tenure-track professors with

between $400,000 to $500,000 in "start-up" funds to allow professors to hire research

assistants, enabling them to complete grant applications for future research.[9]  She also

pleads that other peer colleagues at the time received dedicated lab space for their

research.[10]  Khayal did not receive lab space, start-up funding, or full funding of her

salary during her first three years on the tenure track, and had to use her personal

resources to apply for grants to fund her research.[11]  In 2019, Khayal received a letter

from Dartmouth stating that in order to renew her contract for another term, she would be

expected to obtain external funding for 95% of her salary and research.[12]  In 2021, after

conducting a review without a formal portfolio from Khayal, presumably based on the

2015 start date, Dartmouth informed Khayal that it was removing her from the tenure

track and appointing her to a three-year, non-tenure-track term, for failing to meet

funding and publication expectations.[13]  Khayal alleges that Dartmouth typically makes a

formal portfolio request from assistant professors under review.[14]  When Khayal raised

---

[7] *Id.* at ¶15.

[8] *Id.*

[9] *Id.* at ¶¶ 11-12.

[10] *Id.* at ¶ 14.

[11] *Id.* at ¶¶ 13-14, 16.  The complaint states that at various times, Dartmouth expected her to fund between 83% and 95% of her own salary through research grants.  *Id.* at ¶¶ 16, 20.

[12] *Id.* at ¶ 20.

[13] *Id.* at ¶¶ 26-27.

[14] *Id.* at ¶ 27.

concerns to administrators about her lack of funding and unequal treatment over the tenure review period to date, Dartmouth agreed to reset the review period to start from 2018 but did not increase her salary or research funding.[15]

According to her complaint, Khayal informed Dartmouth administrators in 2021 that she was in the process of applying for an American Cancer Society research grant that required an institutional support letter detailing how much funding and lab space Dartmouth provided to her.[16]  Dartmouth presented Khayal a written offer letter for the new three-year appointment which included funding for her salary and research and dedicated lab space, but was contingent on her releasing any claims she had or could have against Dartmouth.[17]  Khayal then submitted her grant application with an institutional support letter, presumably from Dartmouth, that did not include information about start-up funding.[18]

After submitting the application, Khayal informed Dartmouth that she intended to file a discrimination claim with the New Hampshire Human Rights Commission.[19]  Two days later, Dartmouth sent Khayal a new proposal offering her funding for the remainder of her term and lab space if she received the ACS grant.[20]  The letter did not offer to reset the appointment clock, so Khayal had less than two years, rather than the "typical" five,

---

[15] *Id.* at ¶¶ 30-31.
[16] *Id.* at ¶ 35.
[17] *Id.* at ¶¶ 37-38.
[18] *Id.* at ¶ 40.
[19] *Id.* at ¶ 43.
[20] *Id.* at ¶¶ 44-47.

to access the funding that would allow her to apply for additional grants.[21]  The new proposal was not contingent on a release of claims.[22]  ACS awarded Khayal the grant, but Dartmouth did not provide the dedicated lab space.[23]

Khayal also alleges that she "fears" providing "concordant support" for students protesting the war in Gaza because Dartmouth had previously informed her husband, also a Muslim Arab-American and also a former tenure-track professor, that his involvement in a Muslim student group as a faculty advisor was "extramural involvement" that should have been avoided.[24]

## II.   Applicable legal standard

The Federal Rules of Civil Procedure, including Rule 12(b)(6), require a plaintiff to make factual allegations sufficient to "raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Ocasio-Hernández v. Fortuno-Burset*, 640 F.3d 1, 12 (1st Cir. 2011) (internal citations omitted).  This standard demands more than "threadbare recitals of the elements of a cause of action" or factual allegations that simply "parrot[] [the] standard for [] liability." *Id.* (internal citations omitted).  A claim is facially sufficient if it pleads "factual content" that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

---

[21] *Id.* at ¶ 47.
[22] *Id.* at ¶ 45.
[23] *Id.* at ¶ 52.
[24] *Id.* at ¶¶ 57-59.

Assessing sufficiency is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Rodríguez-Reyes v. Molina-Rodríguez*, 711 F.3d 49, 53 (1st Cir. 2013) (internal citations omitted).  "The relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw from the facts alleged in the complaint." *Ocasio-Hernández*, 640 F.3d at 13.  "[I]f the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." *Borras-Borrero v. Corporacion del Fondo del Seguro del Estado*, 958 F.3d 26, 33 (1st Cir. 2020) (internal citations omitted).  In evaluating whether the plaintiff has met her pleading burden, the court "accept[s] the complaint's well-pleaded facts as true and indulge[s] all reasonable inferences in the plaintiff's favor." *Id.* (internal citations omitted).

## III.   Discrimination claims under Title VII and NH RSA 354-A:7

### a.   Legal standard for discrimination claims

Title VII prohibits an employer from "'discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's' protected characteristics, or 'to limit, segregate, or classify [its] employees ... in any way which would ... adversely affect [an individual's] status as an employee, because of such individual's' protected characteristics." *Stratton v. Bentley Univ.*, No. 22-1061, 2024 WL 3823034, at *5 (1st Cir. Aug. 15, 2024) (quoting 42 U.S.C.

§ 2000e-2(a)).[25]  As part of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, this "prohibition encompasses 'disparate treatment' discrimination, where an employer has 'treated [a] particular person less favorably than others because of' a protected trait.'"[26] *Frith*, 38 F.4th at 270 (quoting *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009)).  "A disparate treatment claim is a claim of intentional discrimination."  *Id.*  Under a disparate treatment theory of employment discrimination, a plaintiff must demonstrate intentional discrimination.  *Udo v. Tomes*, 54 F.3d 9, 12 (1st Cir. 1995).  Disparate treatment claimants bear the burden of proving they were "subjected to different treatment than persons similarly situated in 'all relevant aspects.'"  *Byrd v. Ronayne*, 61 F.3d 1026, 1032 (1st Cir. 1995) (quoting *Smith v. Stratus Computer, Inc.*, 40 F.3d 11, 17 (1st Cir. 1994)).  Complaints must be more than "merely conclusory regarding the characterization of the defendant's motives," and allege facts that give "rise to an inference of discriminatory animus."  *Johnson v. General Electric*, 840 F.2d 132, 138 (1st Cir. 1988) (abrogated on other grounds by *Clockedile v. New Hampshire Dep't of Corr.*, 245 F.3d 1 (1st Cir. 2001)).  Put differently, at the pleading stage in civil rights cases, the plaintiff must "outline specific facts, which if proven would entitle him to relief."  *Christensen v. Lawrence F. Quigley Memorial Hosp.*, 656 F. Supp. 14, 16 (D. Mass. 1985) (Wolf, J.).

---

[25] The court will interpret claims under RSA § 354-A using cases developed under Title VII. *Carney v. Town of Weare*, No. 15-CV-291-LM, 2017 WL 680384 at *6 (D.N.H. Feb. 21, 2017) (McCafferty, J.) ("[T]he New Hampshire Supreme Court relies on cases developed under Title VII to interpret claims under RSA 354–A.")

[26] At oral argument, Khayal's counsel confirmed that her claims under federal and state law were disparate *treatment* claims.

Although to ultimately succeed on the claim, "[a] disparate-treatment plaintiff must establish 'that the defendant had a discriminatory intent or motive' for taking a job-related action," *Frith*, 38 F.4th at 271 (internal citations omitted), "[the First Circuit Court of Appeals has] explicitly held that plaintiffs need not plead facts in the complaint that establish a prima facie case under Title VII, nor must they 'allege every fact necessary to win at trial.'" *Garayalde-Rios v. Municipality of Carolina*, 747 F.3d 15, 24 (1st Cir. 2014) (citing *Rodríguez-Vives v. P.R. Firefighters Corps of P.R.*, 743 F.3d 278 (1st Cir. 2014).  "[N]o single allegation need [establish] ... some necessary element [of the cause of action], provided that, in sum, the allegations of the complaint make the claim as a whole at least plausible." *Id.* (citing *Ocasio-Hernández*, 640 F.3d at 14-15).

In an employment discrimination suit, although a plaintiff need not plead facts "sufficient to establish a prima facie case," the "elements of the prima facie case are []relevant" to a sufficiency determination.  *Germanowski v. Harris*, 854 F.3d 68, 72 (1st Cir. 2017) (quoting *Rodríguez-Reyes*, 711 F.3d at 54).  Bearing in mind that sufficiency requires pleading "enough facts to make entitlement to relief plausible in light of the evidentiary standard that will pertain at trial—in a discrimination case, the prima facie standard," the elements of a prima facie case "may be used as a prism to shed light upon" the sufficiency of the claim. *Rodríguez-Reyes*, 711 F.3d at 54.

**b.  Analysis of discrimination claim**

Khayal alleges that Dartmouth treated her worse than non-Arab, non-Muslim tenure-track professors, affecting her ability to conduct necessary research and the

school's assessment of her progress toward tenure.  Although the complaint does not specifically allege that she was denied tenure because of the school's discriminatory actions, Khayal does allege that she suffered lost wages, employment benefits, and earning capacity.[27]

Dartmouth argues for dismissal because Khayal has not alleged "any specific factual allegations connecting Dartmouth's decisions regarding Dr. Khayal's salary support, lab space and start-up funding to her religion or national origin."[28]  Instead, Dartmouth argues, she "simply alleges that she is Arab-American and Muslim, and that Dartmouth provided her with lesser compensation and fewer resources than what is typically provided to other professors in her field, who she asserts are non-Arab and non-Muslim."[29]  The court disagrees.  Although Khayal does not allege in the complaint any direct evidence of discriminatory intent, or racial or ethnic animus, a plaintiff need only plead facts which give "rise to an *inference* of discriminatory animus." *Johnson*, 840 F.2d at 138 (emphasis added).  And the First Circuit Court of Appeals has explicitly held that plaintiffs need not "allege every fact necessary to win at trial." *Garayalde-Rijos*, 747 F.3d at 24.  Instead, the sum of the allegations must "raise [] more than the sheer possibility" that Dartmouth acted with discriminatory motive. *Frith*, 38 F.4th at 270 (internal citations omitted).  In this case, the sum of the allegations allows the court to draw such an inference.

---

[27] Am. Compl., doc. no. 10, at ¶ 67.
[28] Def. Mem. Supp. M. Dismiss, doc. no. 11-1 at 6.
[29] *Id.* at 6-7.

Taken as a whole, Dartmouth's alleged actions allow an inference that Khayal suffered an adverse employment action on the basis of her race or religion. First, as pleaded, Dartmouth moved Khayal to the tenure track without informing her, and without updating her appointment date to reflect the change to her status.[30] This meant that her performance was initially assessed based on two years in which she either was not or did not know she was subject to tenure-track performance standards.[31] Second, even when Dartmouth did inform her of her status, Khayal alleges that it did not provide start-up funding that would have allowed her to hire research assistants to help with grant applications, even though assistant professors in her department "typical[ly]" receive up to $500,000 of initial support.[32] Despite not providing Khayal with start-up funding to help her apply for grants, Dartmouth allegedly told Khayal that she would need to support up to 95% of her salary through outside grants, even though other Dartmouth assistant professors typically receive 100% of their salaries from the school for the first three years of their terms.[33] Third, according to her complaint, Dartmouth assessed Khayal's progress toward tenure without requesting a formal portfolio, and weighing against her progress several years in which Khayal (1) was not aware she was subject to tenure-track expectations, and (2) did not receive funding to help her apply for the grants she needed.[34] Per the complaint, Dartmouth told Khayal that the decision to remove her

---

[30] Am. Compl., doc. no. 10, at ¶¶ 6-8.
[31] *Id.* at ¶ 15.
[32] *Id.* at ¶¶ 11-12.
[33] *Id.* at ¶ 16.
[34] *Id.* at ¶¶ 11, 18, 26-27.

from the tenure track was based on a failure to meet funding and publication expectations.[35]  She had previously been told that she was otherwise meeting expectations.[36]  When Khayal complained of the treatment, Dartmouth allegedly agreed to reinstate her to a tenure-track position, but initially without providing any additional funding.[37]  Finally, the complaint alleges that when Khayal requested a statement of institutional support for the ACS grant application, Dartmouth initially made its offer of support contingent on Khayal's releasing any claims against the school, a contingency not typically included in offers of support for other professors.[38]  Altogether, these alleged actions create a reasonable inference that Dartmouth did not provide Khayal with similar levels of compensation and funding as it did for other similarly situated professors, which it knew would hamper her ability to meet tenure-track expectations.

Dartmouth also argues that the complaint includes only conclusory statements about comparators without alleging any specific facts showing that similarly situated peers received different treatment or terms of employment, suggesting that because Khayal was offered a position as part of recruitment efforts for her husband, she cannot even show that she was similarly situated to other assistant professors.[39]  But much of the

---

[35] *Id.* at ¶ 26.

[36] *Id.* at ¶ 20.

[37] *Id.* at ¶¶ 30-33.

[38] *Id.* at ¶¶ 35, 37-39.

[39] Def. Mem. Supp. M. Dismiss, doc. no. 11-1, at 7.  Dartmouth states, "Dr. Khayal has not alleged that her non-Muslim and Arab colleagues are similarly situated; indeed Dr. Khayal alleges that she was offered her position at Dartmouth as part of the recruitment efforts for her husband, and was not, herself, recruited to her position."  *Id.*  The court presumes Dartmouth means to suggest that because other assistant professors are generally offered start-up funds and compensation packages as part of the school's initial recruitment efforts, and Khayal was not personally recruited, she cannot show that she is similarly situated to her colleagues.  Dartmouth

information that Khayal would need to show disparate treatment relative to her peers

would not normally be available to her before discovery, namely the specific amounts of

compensation and research support other assistant professors received and at what point

in their terms they received it.  Instead, like the motivations for any employment

decisions Dartmouth made with respect to Khayal and other professors, Dartmouth likely

possesses that information in forms and locations faculty members cannot access,

rendering it unavailable to a complaining plaintiff like Khayal.[40]

Viewing the allegations in the complaint as a whole, the pleaded facts raise more

than the sheer possibility that Khayal suffered from an adverse employment action and

allow a "reasonable expectation that discovery will reveal evidence" of "discriminatory

conduct." *See Santiago v. WHM Carib, LLC,* 126 F. Supp. 3d 211, 219 (D.P.R. 2015)

(Casellas, J.) (quoting *Grajales v. Puerto Rico Ports Auth.,* 682 F.3d 40, 49 (1st Cir.

2012)).

## IV.    Retaliation claim

### a.  Legal standard for retaliation

Title VII "prohibits employers from retaliating against employees who report

violations of that title." *Carlson v. Univ. of New Eng.,* 899 F.3d 36, 43 (1st Cir. 2018)

_____

did not provide any authority to suggest that a recruiting bonus or other inducement to join an
organization would create lasting dissimilarities during employment between otherwise similar
employees.  Dartmouth's suggestion also raises the question of why the school switched Khayal
from the research track to the tenure track in the first place, considering that she was initially
willing to accept a research-track position.

[40] And this information is not available pre-complaint through a Freedom of Information Act
request, as Dartmouth College is a private institution.

(citing 42 U.S.C. § 2000e-3(a)).  While "Title VII's substantive provision protects against

discrimination based on *who* one is . . . the retaliation provision protects *what* one does."

*Stratton*, 2024 WL 3823034 at *5 (emphasis in original).  To state a retaliation claim

Khayal must allege that "(1) she engaged in protected activity; (2) she suffered some

materially adverse action; and (3) the adverse action was causally linked to her protected

activity."  *Id.* (quoting *Dixon v. Int'l Bhd. of Police Officers*, 504 F.3d 73, 81 (1st Cir.

2007); *see also Morin v. E. Bearings, Inc.*, No. 20-cv-615-PB, 2020 WL 7406391, at *3

(D.N.H. Dec. 16, 2020) (Barbadoro, J.) (citing *Dennis v. Osram Sylvania, Inc.*, 549 F.3d

851, 856 (1st Cir. 2008)).  "In this context, an adverse employment action is one that 'a

reasonable employee would have found ... materially adverse,' meaning that such action

well might have 'dissuaded a reasonable worker from making or supporting a charge of

discrimination.'"  *Morin v. E. Bearings, Inc.*, 2020 WL 7406391, at *3 (quoting *Morales-

Vallellanes v. Potter*, 605 F.3d 27, 36 (1st Cir. 2010)); *see also Stratton*, 2024 WL

3823034 at *10.  "Retaliation need not have 'a dramatic impact' on a plaintiff's job or

even 'relate to the terms or conditions of employment,' . . . 'intensification of

[preexisting] harassment' can be actionable as retaliation so long as it could dissuade a

reasonable employee from engaging in protected activity."  *Stratton*, 2024 WL 3823034

at *10.  The protected activity must also be "a but-for cause of the alleged adverse action

by the employer," meaning that "a plaintiff must show that their employer would not

have taken the adverse action but for a desire to retaliate."  *Id.* at 11 (internal citations

omitted).

### b. Analysis of retaliation claim

Khayal does not allege facts that would allow the court to draw a "reasonable inference" that Dartmouth retaliated against her for engaging in protected conduct. *See Ocasio-Hernández*, 640 F.3d at 12. Khayal sufficiently alleges that she engaged in protected conduct by criticizing Dartmouth's recommendation to remove her from the tenure track as unlawfully biased, by informing Dartmouth that she would file a claim of discrimination, and by filing a claim.[41] But she does not allege that Dartmouth took any adverse action against her as a result of her protected conduct. The complaint alleges that Dartmouth retaliated by denying her "necessary resources for her job," namely research funding and dedicated lab space.[42] But Dartmouth was already denying Khayal research funding and dedicated lab space before she engaged in any protected activities, and the complaint contains no allegations that Dartmouth continued or prolonged these practices as a response to her protected action. *See Stratton*, 2024 WL 3823034 at *10 ("'intensification of [preexisting] harassment' can be actionable as retaliation so long as it could dissuade a reasonable employee from engaging in protected activity") (internal citations omitted). In fact, the allegations in the complaint suggest that Dartmouth's conduct improved after Khayal informed the school of her complaints. First it agreed to reinstate her tenure track status, and then it sent her a new proposal that allowed her to secure the ACS grant.[43] Neither of these alleged actions evinces an "intensification of . . .

---

[41] Am. Compl., doc. no. 10, at ¶ 74.
[42] *Id.* at ¶¶ 30-32, 43-47, 52, 75.
[43] *Id.* at ¶¶ 31, 34, 44-46, 51.

harassment" by Dartmouth.  *Id.*  It is not impossible, however, that facts supporting a retaliation claim may come to light during discovery.  The court therefore dismisses the claim without prejudice.

## V.    Conclusion

For the foregoing reasons, the court denies Dartmouth's motion to dismiss with respect to counts I and II of the complaint and grants it with respect to counts III and IV.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated:  August 20, 2024

cc:    Joseph L. Sulman, Esq.
       Mark M. Whitney, Esq.
       Pierre A. Chabot, Esq.
       Stasie Levin, Esq.